# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| KIWI INTELLECTUAL ASSETS CORPORATION,<br><br>  Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>  Defendants. | Civil Action No.: _____<br><br>**Jury Trial Demanded** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff KIWI Intellectual Assets Corporation ("KIWI"), files this Complaint for patent infringement against Defendants Samsung Electronics Co., Ltd. ("SEC") and Samsung Electronics America, Inc. ("SEA") (collectively "Defendants"), alleging as follows:

### I.   THE PARTIES

1. KIWI is a foreign corporation having a principal place of business at 8 F.-2, No. 1, Wuquan 1st Rd., Xinzhuang Dist., New Taipei City 248022, Taiwan (Republic of China).

2. Defendant SEC is a foreign corporation organized and existing under the laws of the Republic of Korea. SEC has a principal place of business located at 129 Samsung-ro, Yeongtong-Gu, Suwon-Si, Gyeonggi-Do 16677, Republic of Korea. The Republic of Korea is a signatory to the Hague Service Convention, and SEC may be served through the Central Authority in that country under Fed. R. Civ. P. 4(f)(1).

3. On information and belief, SEC prepares financial statements in accordance with Korean IFRS 1110 Consolidated Financial Statements. In notes to the financial statements for the year ending December 31, 2024, SEC identifies Defendant SEA as a subsidiary.

4. In the notes to the financial statements for the year ending December 31, 2024, SEC, referring to itself as "the Company," admits the following:

> SEC, as the controlling company, consolidates its 230 subsidiaries, including Samsung Display Co., Ltd. and Samsung Electronics America Inc. The Company also applies the equity method of accounting for its 34 associates and joint ventures, including Samsung Electro-Mechanics Co., Ltd.

5. Defendant SEA is a wholly owned subsidiary corporation of SEC and is organized and existing under the laws of New York with a principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey 07660. SEA has a place of business at 6625 Excellence Way, Plano, Texas 75023. On information and belief, SEA employs more than 1,000 employees, including sales personnel and engineers, at this office.

6. SEA may be served through its registered agent for service of process, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201.

7. SEA has offices and other facilities in Texas, including within this District, at least at 2601 Preston Road, Suite #1214, Frisco, Texas 75034.

8. Defendants sell and offer products for sale in this District, including at least at the Samsung Experience Store at 2601 Preston Road, Frisco, Texas. Defendants further sell and offer products for sale through authorized dealers in the State of Texas and this District. On information and belief, the products sold and offered for sale in this District include one or more of the products accused of infringement herein.

9. Further, SEA is a general manager for SEC, both of which may also be effectively served with process in accordance with the laws of California and the Federal Rules of Civil Procedure. SEA is registered to do business in the state of California and has designated a registered agent in the state. Further, on information and belief, the relationship between SEA and SEC provides SEC with the business advantages that it would enjoy if it conducted its business through its own offices or paid agents because SEA acts as the exclusive seller of SEC products within the United States. On information and belief, SEA's responsibilities specifically include handling the sales, marketing, distribution, and customer support for SEC products within the United States. Indeed, service of process upon SEA, in its capacity as general manager of SEC, is reasonably certain to apprise SEC of the pendency of this action and as such would be and is proper service.

## II. JURISDICTION AND VENUE

10. This is an action for patent infringement under the Patent Laws of the United States. 35 U.S.C. § 101, et seq.

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

12. This Court has personal jurisdiction over Defendants under the laws of the State of Texas, due at least to their conducting substantial business in Texas and their purposeful availment of conducting such business in the State of Texas, including within this judicial district, directly or through intermediaries, including: (i) at least a portion of the infringing conduct alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in the State of Texas.

13. This Court also has personal jurisdiction over Defendants based on their introduction and delivery of infringing products and services into the stream of commerce with the expectation that such infringing products would be sold and/or used in this judicial district. *See in re Toyota Hybrid Brake Litig.,* 2021 U.S. District LEXIS 124918 (E.D. Tex. Jul. 6, 2021). Nor would the court's exercise of personal jurisdiction over Defendants violate traditional notions of fair play and substantial justice.

14. Defendants have not disputed this judicial district's personal jurisdiction over them in other patent infringement actions. *See, e.g.,* Answer (Dkt. No. 26) at ¶¶ 21-23, *Telcom Ventures LLC v. Samsung Electronics Co., Ltd.*, No. 2-24-cv-00691 (E.D. Tex. Dec. 9, 2024); Answer (Dkt. No. 22) at ¶¶ 17, 20-24, *VB Assets, LLC v. Samsung Electronics Co., Ltd.*, No. 2:24-cv-828 (E.D. Tex. Jan. 14, 2025); Answer (Dkt. No. 26) at ¶ 7, *Mobile Data Technologies LLC v. Samsung Electronics America, Inc.*, No. 2:24-CV-00435 (E.D. Tex. Oct. 7, 2024).

15. Alternatively, and if SEC is not subject to jurisdiction in any state court of general jurisdiction, upon information and belief, SEC has purposefully availed itself of the privilege of conducting business activities and causing a consequence throughout the United States by advertising and regularly selling infringing products to consumers through its highly interactive commercial website. These activities in their aggregate subject SEC to jurisdiction of this Court pursuant to Fed. R. Civ. P. 4(k)(2) and exercising such jurisdiction is consistent with the United States Constitution and laws.

16. Venue is proper as to SEA in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b). On information and belief, SEA maintains a regular and established place of business in this judicial district at 6625 Excellence Way, Plano, Texas 75023. At least a portion of Defendants' infringement of U.S. Reissued Pat. No. RE50,307 as alleged herein occurs within this judicial

district through Defendants' sales, offers to sell, and uses of infringing products and services within this judicial district, and introduction of their infringing products and services into the stream of commerce knowing they would be sold and/or used in this judicial district.

17. Venue is proper as to SEC in this District under 28 U.S.C. § 1391(c)(3) because, on information and belief, it is not a resident of the United States and therefore may be sued in any judicial district.

### III. FACTUAL ALLEGATIONS

18. KIWI is a technology company owned by a prolific inventor, Chou Hsien "Terry" Tsai, and strives to be first to market with innovations designed to simplify connections between electronics components. Indeed, for over 30 years, Mr. Tsai has been engaged in the research and design of electronic connectors and related electronic products. In addition to the inventions described below, his other notable contributions to the electrical connector field include, but are not limited to, the bidirectional Smart Card socket, the solder-free ball design for CPU Sockets, and patented latch structures for DDR II Socket, Mini PCI, and DDR SO DIMM.

19. Mr. Tsai applies a manufacturer's perspective to product design, focusing on reducing production costs while enhancing overall product quality. In 1994, Mr. Tsai founded TOP YANG Technology Enterprise, which has received product acclaim from clients like Foxconn, AMP, Inc. (TE Connectivity) and others.

20. Mr. Tsai protects his innovative products, in part, by pursuing and obtaining numerous U.S. and foreign patents that cover the various inventive concepts the products embody. Indeed, Mr. Tsai has been issued over 90 U.S. patents covering his various technologies.

21. In the early 2000s, Mr. Tsai began developing technologies to address the connectivity and usability issues presented by then-existing connectors, i.e. sockets and the plugs that were needed to integrate with them.

22. Mr. Tsai invested substantial time and resources in developing improved socket and connector, i.e. plug, designs, which are protected by U.S. and foreign patents.

23. A widely used-transmission specification pertaining to sockets and transmission cables (which typically terminate in a plug that connects to a socket,) is the Universal Serial Bus ("USB") socket/cable systems. The USB is a set of industry standards, the first of which was released in 1996, that defines cables, connectors and protocols for connection, communication, and power supply between and among personal computers and other electronic devices.

24. Inventor Tsai sought to improve existing USB socket designs to address issues, such as the well-known frustration experienced by USB-A connector users. That frustration is that the USB-A plug can only be inserted into the receiving socket in one orientation.

25. Recognizing these issues and being an expert in the field, Inventor Tsai sought to develop a socket structure that would allow a USB plug to be normally and oppositely inserted into a receiving socket to create an electrical connection between the various connectors in a simple, easy, and reversible manner.

A. **Asserted Patent RE50,307**

26. U.S. Reissued Patent No. RE50,307 ("the '307 Patent") is entitled "SOCKET STRUCTURE WITH DUPLEX ELECTRICAL CONNECTION," issued on February 18, 2025, and identifies Chou Hsien Tsai as the sole inventor. A true and correct copy of the '307 Patent is attached hereto as Exhibit 1 and incorporated by reference in its entirety.

27. By assignment, Plaintiff KIWI is the sole owner of all rights, title and interest in the '307 Patent with the full and exclusive enforcement rights. That assignment is recorded beginning at Reel/Frame No. 067400/0652 of the USPTO Assignment database.

28. The '307 Patent is directed to, *inter alia*, innovative socket structures with duplex electrical connections. These allow, for example, USB-C connectors to conveniently and easily be reversibly connected.

29. The inventions described in the '307 Patent address various deficiencies with prior art sockets and plugs, such as the preexisting USB-A socket and plug. For example, the '307 Patent described the inconvenience associated with prior art sockets and plugs.

> In use, the USB plug has to be correctly inserted so that the connection terminals of the USB plug and the USB socket may be electrically connected together.
>
> In order to ensure the inserted USB plug to be electrically connected to the USB plug, the USB plug and socket have mistake-proof designs. That is, when the USB plug cannot be oppositely inserted, the user has to turn the USB plug and then insert the USB plug so that the electrical connection may be ensured after the insertion.
>
> The user usually randomly inserts the USB plug into the USB socket. So, the possibility of [being] incapable of inserting the USB plug reaches 50%. The user often has to insert the USB plug twice in an inconvenient manner.

'307 Patent at 1:42-55.

30. The '307 Patent describes various embodiments of addressing this and other deficiencies. For example, Figures 52 (exploded view) and 53 (assembled view) from the patent show an embodiment of a socket structure described in the '307 Patent. This embodiment "allows the plug to be inserted normally and oppositely." '307 Patent at 12:65-67.



31. Figure 37 shows the front view of another embodiment of a socket structure described in the '307 Patent. Like the socket structure depicted in Figures 52 and 53, this embodiment likewise "allows a plug to be normally and oppositely inserted for connection" and shows a preferred reversible electronic connection configuration. '307 Patent at 10:57-59.



32. Figures 40 and 41 depict usage states for the embodiment shown in Figure 37. Figure 40 shows the state in which the connection terminal of the plug is inserted upwardly into the connection slot, while Figure 40 shows the state in which the connection terminal is inserted downwardly into the connection slot. '307 Patent at 11:51-67. In other words, the design of this embodiment allows "bidirectional insertion." *Id.* at 12:1-3.



FIG. 40



FIG. 41

33. The claims of the '307 Patent are similarly generally directed to innovative socket structures that address various deficiencies in prior art sockets. For example, claim 34 of the '307 Patent is reproduced below.

> 34. A socket structure with duplex electrical connection, the socket structure comprising:
>
> a plastic base;

a connection slot, which is disposed in front of the plastic base and configured to be connected to a plug having at least one row of connection terminals;

a tongue, which has a first surface with grooves, and a second surface with grooves, the second surface disposed opposite the first surface, the tongue being disposed on one end of the plastic base and within the connection slot, such that chambers of the connection slot on two sides of the tongue allow the plug to be normally and oppositely inserted and positioned into the connection slot;

at least one row of first contacts separately arranged on the first surface of the tongue, wherein each of the first contacts is electrically connected to a respective first pin extending out of the plastic base; and

at least one row of second contacts separately arranged on the second surface of the tongue, wherein:

each of the second contacts is electrically connected to a respective second pin extending out of the plastic base;

the socket structure is operative to simultaneously electrically connect via the first and second contacts;

the at least one row of first contacts has a functional reverse mirror configuration relative to the at least one row of second contacts, and the socket structure is thereby configured for two separate operational states:

a first operational state when the plug is normally inserted into the connection slot with the at least one row of connection terminals of the plug facing the second surface of the tongue, the at least one row of connection terminals of the plug are electrically connected to the at least one row of second contacts and the tongue is disposed within the connection slot, wherein the connection slot is symmetric with symmetric up and down chambers, and symmetric left and right chambers around the tongue; and

a second operational state when the plug is oppositely inserted into the connection slot with the at least one row of connection terminals of the plug facing the first surface of the tongue, the at least one row of connection terminals of the plug are electrically connected to the at least one row of first contacts, and the tongue is disposed within the connection slot, wherein the connection slot is symmetric with symmetric up and down chambers, and symmetric left and right chambers around the tongue.

B.     **Defendants' Accused Instrumentalities And Infringing Conduct**

34.     Defendants have been making, selling, using and offering for sale products that infringe the '307 Patent in violation of 35 U.S.C. § 271 (collectively, "Accused Products"). These Accused Products include at least phones, tablets, monitors, hard drives, and other devices including a USB-C socket or interface and/or a socket or interface compatible with USB-C plugs, including, but not limited to, at least the products specifically identified in Exhibits 6-9.

35.     For example, Defendants sell and/or offer for sale, including at least through its website at samsung.com, the Portable SSD T7 Shield USB 3.2 ("Samsung T7"). The Samsung T7 is a portable hard drive that includes a socket or interface compatible with the included USB-C plug.

36.     Defendants further provide instructions for connecting the included USB-C plug to the socket or interface of the Samsung T7.



Exhibit 2, Samsung Portable SSD T7 User Manual, p. 6.

37. Defendants sell and/or offer for sale, including at least through its website at Samsung.com, the Samsung Galaxy Tab S9 FE+ ("Galaxy S9 FE+"). The Galaxy S9 FE+ is a tablet that includes a socket or interface compatible with the included USB-C plug.

38. Defendants further provide instructions for connecting a USB-C plug to the socket or interface of the Galaxy S9 FE+. *See* Exhibit 3, Galaxy S9 FE+ User Guide, pp. 7, 9.

39. Defendants sell and/or offer for sale, including at least through its website at samsung.com, the Samsung Galaxy S24 FE ("Galaxy S24 FE"). The Galaxy S24 FE is a smartphone that includes a socket or interface compatible with the included USB-C plug.

40. Defendants further provide instructions for connecting a USB-C plug to the socket or interface of the Galaxy S24 FE. *See* Exhibit 4, Samsung Galaxy S24 FE User Guide, pp. 6-8.

41. Defendants sell and/or offer for sale, including at least through its website at Samsung.com, the ViewFinity S8 High Resolution Monitor ("ViewFinity S8"). The ViewFinity S8 is a monitor that includes a socket or interface compatible with the included USB-C plug.

42. Defendants further provide instructions for connecting the included USB-C plug to the socket or interface of the ViewFinity S8. *See* Exhibit 5, S27D80*U User Guide, pp. 19, 21, 22, 24, 26.

43. Additional products sold and/or offered for sale by Defendants since February 18, 2025, that include a USB-C-compatible interface or socket and/or that Samsung describes as including a USB-C or USB Type-C port, interface, or socket include, but are not limited to, the following:

**Phones:** The Galaxy S25 Edge, the Galaxy S24FE, the Galaxy S25 Ultra, the Galaxy S25, the Galaxy S25+, the Galaxy A16, the Galaxy A15, the Galaxy S24 Ultra, the Galaxy S24, the Galaxy Z Fold6, the Galaxy Z Flip6, the Galaxy Z Fold5, the Galaxy A35, the Galaxy

A26, the Galaxy A36, the Galaxy S23 FE, the Galaxy Z Flip7, the Galaxy Z Fold7, the Galaxy Z Flip7 FE;

**Tablets:** The Galaxy Tab S10 Ultra, the Galaxy Tab S10+, the Galaxy Tab S10 FE, the Galaxy Tab S10 FE+, the Galaxy Tab S9+, the Galaxy Tab S9, the Galaxy Tab S9 FE, the Galaxy Tab A9, the Galaxy Tab A9+ Kid's Edition;

**Power Adapters:** 45W Power Adapter (EP-T4511); 50W Power Adapter (EP-T5020); 15W Power Adapter (EP-T1510);

**Laptops:** The Galaxy Book4, the Galaxy Chromebook Plus, the Galaxy Book4 Edge, the Galaxy Book4 Ultra, the Galaxy Book5 Pro, the Galaxy Book5 360, the Galaxy Book5 Pro 360;

**Monitors:** The Smart Monitor M9 (including the M90SF), the Smart Monitor M8 (including the M80D and M80F), the Odyssey QD-OLED G9, the ViewFinity S9, the Smart Monitor M7 (including M70F and M70D), the ViewFinity TU874, the ViewFinity S80PB, the ViewFinity S65VC, the ViewFinity S65UC, the M70C Smart Monitor, the M80C Smart Monitor, the ViewFinity S65UA, and the ViewFinity S60UA;

**Televisions:** The LS03FW, the LS03FA, the S95F, the S95D, the QN990F, the SN900D, the QN800D; and

**Other Devices:** Hard drives such as the SSD T9; USB-C Chargers; Cameras with a USB-C port for connection to a display; Remote controls with a USB-C port used for charging, which are sold with at least the M8, S85F, the QN1EF, and the Q8F.

### IV.    FIRST CLAIM FOR RELIEF
### (Patent Infringement Under 35 U.S.C. § 271 of the '307 Patent)

44.    KIWI incorporates paragraphs 1 through 43 as though fully set forth herein.

45. The '307 Patent includes 102 claims. Defendants directly infringe one or more of these claims without the authority of KIWI by importing, manufacturing, using, offering for sale, and selling Accused Products.

46. More specifically and without limitation, Defendants have been and are directly infringing, either literally or under the doctrine of equivalents, at least Claim 34 of the '307 Patent by importing, manufacturing, using, offering for sale, and/or selling the '307 Patent Accused Products, including, but not limited to, the T7, Galaxy Tab S9 FE+, Galaxy S24 FE, and ViewFinity S8, as shown in the '307 Patent Preliminary Claim Charts (Exs. 6-9).

47. On information and belief, the Accused Products specifically addressed in Exs. 6-9 are representative of other Accused Products that include a socket or interface compatible with a USB-C plug, in that they are reasonably similar and infringe in the same way. For example, on information and belief, other Accused Products include a similar socket or interface structure that is compatible with USB-C plugs and provides the same or similar functionality in a similar manner.

48. On information and belief, Defendants are also liable for inducing infringement of the '307 Patent under 35 U.S.C. § 271(b) by having knowledge of the '307 Patent at least as early as through this Complaint and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '307 Patent, with specific intent, by its customers. Specifically, Defendants induce infringement of the '307 Patent by promotion and/or sales of the '307 Patent Accused Products. Upon information and belief, Defendants' customers of the '307 Patent Accused Products also directly infringe the '307 Patent by using and/or assembling the '307 Patent Accused Products as instructed by Defendants. Additionally, Defendants are liable for contributory infringement of the '307 Patent by promotion and/or sales of the '307 Patent Accused Products. The '307 Patent Accused Products include a USB-C port or socket structure

which is especially made or adapted to be connected with a USB-C plug and/or cable, and Defendants were aware or should have been aware that such USB-C ports or socket structures are not a staple article or commodity of commerce suitable for substantial non-infringing use.

49. As alleged above, Defendants had prior knowledge of the '307 Patent at least as early as the filing date of this Complaint and knew, should have known, or was willfully blind to the fact that Defendants' infringement of the '307 Patent at least as early as the filing of this Complaint. 35 U.S.C. § 271.

50. Defendants are thus liable for infringement of the '307 Patent pursuant to 35 U.S.C. § 271 for sales and other acts of infringement after the issuance of the '307 Patent- *i.e.*, February 18, 2025.

51. Defendants' infringement of the '307 Patent has been and continues to be willful, at least from the filing date of this Complaint.

52. Defendants are liable to KIWI in an amount that adequately compensates it for their infringement in an amount that is not less than reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## V. PRAYER FOR RELIEF

KIWI requests that the Court find in its favor and against Defendants, and that the Court grant KIWI the following relief:

A. Judgment that one or more claims of the '307 Patent ("Asserted Patent") have been infringed, either literally and/or under the doctrine of equivalents, by Defendants;

B. Declaring that the Asserted Patent is valid and enforceable;

C. Awarding damages in an amount to be proven at trial, but in no event less than a reasonable royalty, for Defendants' infringement, including entry of a judgment that Defendants

account for and pay to KIWI all damages to, including a reasonable royalty, and costs incurred by KIWI because of Defendants' infringing activities and other conduct complained of herein, including an award of all increased damages to which KIWI is entitled under 35 U.S.C. § 284 since at least as early as when Defendants received actual notice of their infringement;

      D.      Declaring this an exceptional case for at least its willful infringement and awarding KIWI its attorneys' fees and costs in accordance with 35 U.S.C. § 285;

      E.      Pre-judgment and post-judgment interest on the damages caused to KIWI by reason of Defendants' infringing activities and other conduct complained of herein; and

      F.      Such other and further relief as the Court may deem just and proper under the circumstances.

## VI. DEMAND FOR JURY TRIAL

KIWI requests a trial by jury pursuant to Fed. R. Civ. P. 38.

Dated: August 18, 2025

Respectfully submitted,

By: */s/ Claire Abernathy Henry*
    Claire Abernathy Henry
    Texas Bar No. 24053063
    claire@millerfairhenry.com
    MILLER FAIR HENRY PLLC
    1507 Bill Owens Parkway
    Longview, Texas 75604
    (903) 757-6400

    Robert R. Brunelli
    CO State Bar No. 20070
       rbrunelli@sheridanross.com
    Scott R. Bialecki
    CO State Bar No. 23103
       sbialecki@sheridanross.com
    Brian Boerman
    CO State Bar No. 50834
       bboerman@sheridanross.com
    SHERIDAN ROSS P.C.
    1560 Broadway, Suite 1200

        Denver, CO 80202
        Telephone: 303-863-9700
        Facsimile: 303-863-0223
        litigation@sheridanross.com

*Attorneys for Plaintiff*
*KIWI Intellectual Assets Corporation*